John CUNNINGHAM et al., Plaintiffs,

v.

John F. ENGLISH et al., Defendants.

Civ. A. No. 2361–57.

United States District Court
District of Columbia.

Dec. 11, 1958.

* 60 S.Ct. 1059, 84 L.Ed. 1345.

Martin F. O'Donoghue, Washington, D. C., Chairman of and attorney for the Monitors.

Edward Bennett Williams, Washington, D. C., for Teamsters.

Godfrey P. Schmidt, New York City, for plaintiffs.

LETTS, Chief Judge.

After twenty-two days of trial and when the plaintiffs had rested their case, the parties presented to the Court the consent order which is involved herein. The Court was not called upon to weigh the evidence which had been adduced.

The plaintiffs are rank and file members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated association. The defendants are an unincorporated association, and the officers thereof who were elected at the 1957 convention held in the City of Miami, Florida.

The action had been brought to restrain such officers so elected from assuming the duties of their offices upon the ground that the convention had been rigged and that the election of such officers was not an expression of the membership of such International Brotherhood. As a matter of convenience throughout this Memorandum the International Brotherhood above mentioned and the individual defendants will be referred to as the Teamsters.

By the consent order the individual defendants were permitted provisionally to assume the duties of the offices to which they had been elected.

Several motions are before the Court for decision. They will be dealt with separately. Because of its overall importance, the Court will first consider the petition of the Monitors for construction, reformation and/or modification of the consent order. The power and authority of the Court to reform or modify the consent order is challenged, it being asserted by the Teamsters that the consent order must be read literally. It seems appropriate that consideration of such question should have first consideration. The law relating to this controversy is fully expounded by Justice Cardozo in United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999, wherein it is said:

"We are not doubtful of the power of a court of equity to modify an

injunction in adaptation to changed conditions, though it was entered by consent. * * * Power to modify the decree was reserved by its very terms. * * * If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act."

The law so stated by Justice Cardozo has to the knowledge of this Court never been disturbed, altered or in any manner changed. The conclusion is reached that a construction of the consent order requires a determination of the basic purpose for which the order was entered. Bearing in mind that the individual defendants were permitted provisionally to assume office, it is clear from a reading of the consent order, that the basic purpose of the order was to pave the way for a new convention of the International Brotherhood and for a new election of officers in accordance with the provisions of the International constitution. The consent order was entered with the tacit understanding that the evidence which had been adduced at the trial for the purpose of establishing plaintiffs' claim that the Miami convention was rigged through corrupt practices for the purpose of permitting the leaders to control the action of the convention by depriving the rank and file membership of their democratic processes in the selection of delegates to such convention tended to prove that claim.

The consent order provided for the appointment of a Board of Monitors, one member to be selected by plaintiffs, one by the defendants and the third by the Court. The question arises as to what powers the Board of Monitors has. The Court is of opinion and holds that their powers were not limited but included all proper efforts on the part of the Board to assure the rank and file membership of the International organization that a new convention would be conducted according to the provisions of the International constitution and assuring the membership that their democratic processes would not be violated. In other words, the Board of Monitors was empowered to exert every known method of achieving the basic purpose as set forth in the consent order, to wit, that a new convention would be free of corruption and in recognition of the rights of the membership.

It was tacitly understood that the evidence which had been adduced showed that officials of the International organization and of many of the Locals were corrupt and a menace to the constitutional rights of the members. It, therefore, became necessary for the Monitors to proceed to see that the International and the Locals were freed of corrupt influences by the processes of a general housecleaning. The activities of the Monitors to accomplish such purpose gave rise to many of the difficulties presented by the motions now before the Court. The consent order places this duty and responsibility upon the Board of Monitors.

It must be kept in mind that the Monitors are officers of the Court and subject to its supervision and direction to effectuate the order according to its spirit and basic purpose. The Court does not subscribe to the view that the duties and privileges of the Monitors were merely advisory.

It is true that in the early days of the monitorship the Teamsters gave substantial compliance with the orders of recommendation but it may be observed that in those early days the work of the Monitors was preparatory to its vital purposes. The trouble arose when the Monitors proceeded to clean up the International organization and many of the Locals by seeking the dismissal of persons in position of power and authority who were known to be or suspected of being trouble makers and of a mind to control elections and conventions contrary to the constitutional rights of the

members. At about this time the Monitors also set out to install by-laws in the Locals which would insure to the membership honest and uncontrolled elections. It was at this point that the Teamsters began to frustrate and block the Monitors in their efforts. In some instances they even refused to confer with the Monitors in a way which amounted to an unspoken rejection of the recommendations of the Monitors. This was in violation of their rights, knowing that if they doubted the reasonableness of such recommendations or doubted that the recommendations were pertinent to the basic purpose of the order, they had recourse to the Court. Upon such matters of disagreement, recourse has always been available to the Court for its ruling and determination of the existing controversy.

As has been indicated, the consent order is not to be construed by a literal reading of its provisions. The Monitors are officers of the Court and their powers are not limited by the grant of express powers. All other powers reasonably necessary to effect the basic purposes of the order are implied and available to the Monitors and in view of changed circumstances the inherent powers of the Court are at command to achieve the basic purposes of the order.

Such changed circumstances arose and have continued since the Teamsters ceased cooperation with the Monitors and refused or ignored the reasonable and relevant requests of the Monitors. The conduct of the Teamsters in such respect was in disregard of their obligations to afford good faith compliance with the reasonable and pertinent orders of recommendation issued by the Monitors.

Such rejection of the orders of recommendation was with full knowledge that the individual defendants were permitted provisionally to assume the duties of the offices to which they have been elected.

The language of the consent order carries the meaning that such permission to assume office is temporary and granted in view of existing known conditions and of assumed obligations. By definition and by nature a provision of this kind is subject to change.

The Court has examined each of the orders of recommendation mentioned in the petition of the Monitors for construction, reformation and/or modification of the consent order as amended. The Court finds that each of such orders of recommendation is reasonable and relevant to the basic purposes of the consent order. The Teamsters are obliged to comply with such orders of recommendation and in good faith cooperate with the Monitors to achieve the purposes expressed therein.

It is unncessary to specifically comment on the several orders of recommendation which have been ignored by the Teamsters. The Court, however, will mention them by number, namely, Numbers 4, 11, 12, 14, 16, 17, 18, 19, 20 and 21. As has been stated, each of these orders of recommendation is reasonable and relevant to the basic purposes of the consent order and is deemed to be of primary importance in the work of the Monitors.

When the consent order was considered and agreed upon it was believed that necessary preparation to assure that a new convention would be organized and conducted honestly without dictation of the bosses and in full accord with democratic principles in the interest of the dues paying members would be accomplished within one year and so the consent order was written in the belief and understanding that good faith compliance would be accorded by the Teamsters. Since the Teamsters have failed in that requirement and since the Teamsters have blocked and obstructed the efforts of the Monitors to achieve the necessary clean-up in the International and the Locals, the very essence of the consideration upon which the time element rested has been completely destroyed. The Court finds it necessary to modify and amend the consent order by deleting therefrom the privilege granted the Teamsters of calling a new convention after one year and inserting the following provision:

"The time for the convention shall be subject to recommendation by the Board of Monitors to the General Executive Board of the International, with the exact time of holding the convention being subject to the final approval of the Court."

The foregoing modification of the consent order becomes imperative since the Teamsters have, without the knowledge and consent or approval of the Board of Monitors or of the Court, issued a call for a convention in the early part of March, 1959. Such action on the part of the Teamsters was in disregard of their obligation to make good faith effort to pave the way for the new convention by cleaning house and making preparation for the return of control to the rank and file membership through democratic processes. The Court now declares such attempt to call a new convention is null and void and the Teamsters are ordered to promptly give appropriate notice to the membership that the convention will not be held as announced in the call.

The failure of the Teamsters to cooperate and to accord good faith compliance with the orders of recommendation of the Monitors to achieve the basic purposes of the consent order has occasioned loss of valuable time. Now that the views of the Court respecting many matters in dispute are known the Court will expect prompt compliance with such orders of recommendation which have been made and such reasonable orders of recommendation as may be made by the Monitors touching the matter of housecleaning and compliance with all provisions tending to assure that the next convention will be organized and conducted honestly in such a manner as to be free of control by labor bosses while promoting in all respects the interest of the dues paying members.

Remedies are not lacking in our judicial processes if the orders of the Court are violated, disregarded or ignored. As of now they need not be mentioned or considered.

The Second Amendment to the Petition for Construction requests the Court (a) to instruct the Monitors concerning the proper interpretation of Article X, Section 5(c) of the 1952 International Constitution; (b) to instruct the Monitors concerning the proper interpretation of the 1957 Amendment to Article X, Section 5(c) of the International Constitution dealing with the payment of one month's dues in advance by those members on check-off to insure their good standing; and (c) to determine whether or not there had been sufficient publication of the 1957 Amendment as a matter of law and whether there was a denial of due process. The Board raised these issues specifically with respect to Local 377 in Youngstown.

Under order of recommendation No. 23, regarding the eligibility of Joseph Larry Carrelly, William James Gaw and Joseph Sammartino, who were nominated for office in Local Union No. 377 of Youngstown, Ohio, the Board of Monitors ruled that there had not been proper promulgation of the 1957 Amendment to Article X, Section 5(c). The Local in Youngstown did not publish or post this Amendment on any bulletin boards and did not give notice to the members of the effective date of this Amendment. Carrelly did not receive a copy of the March issue of the International Teamster and Sammartino and Gaw did not read the notice that appeared in the March issue. These men were working under a check-off and their employer paid the dues later than the first of the month. Further, these applicants had no opportunity to pay one month's dues in advance because they did not know of the Amendment and were not given reasonable notice of when the Amendment would be put into effect. Thus, there was a denial of due process in the application of this Amendment.

The 1957 Amendment to Article X, Section 5(c) was purportedly promulgated by being published in the March, 1958, issue of the International Teamster and that notice, a copy of which was attached to the Second Amendment as Mon-

itors' Exhibit No. 27, stated that the Amendment was "now in effect". The 1957 Constitution became effective on January 31, 1958, with the entering of the consent order. Hence, this Amendment was effective on February 1 and March 1, 1958, and members who had not paid one month's dues in advance on those dates were disqualified. When it went into effect, members immediately became disqualified to run for office. The notice in the March issue stating that the new requirement was "now in effect" is a clear indication that it was in effect on March 4 or 5. There was no prospective effective date stated.

█ Inasmuch as the membership did not receive a reasonable time within which to comply with the new constitutional requirement, General President Hoffa should be ordered to republish this Amendment and put it into effect three months after its publication. Each local union should post it on its bulletin boards three times and notify all members of its publication and the effective date of the Amendment.

█ The Court sees another general objection to the 1957 Amendment. Under the check-off system the employer becomes the agent of the Union and as such withholds for the benefit of the Union the dues owed by its member employees. The 1957 Amendment requires payment of one month's dues in advance by members subject to the check-off system in order to qualify as candidates for office. Members of the Union not subject to the requirements of the check-off system who are, through favor or otherwise, permitted to pay their dues directly at the office of the Local are not required to make advance payment of dues. Any such privileged member therefore has an advantage over members subject to the system. The system affords the local labor bosses the opportunity to control the management of the Locals by limiting the number of members eligible for office. So operated the system amounts to a discrimination in favor of members permitted to make direct payment over those subject to the check-off system. It is a device by which incumbents are perpetuated in office. Because of such discrimination it is contrary to public policy and invalid.

 The Monitors have questioned the legality of the merger of Locals 183 and 959 in Alaska. No direct reference may be found in the national Constitution as of 1952 nor as amended in 1957 to the subject so presented. Article XIX of both 1952 and 1957 provides, "No local union can dissolve, secede or disaffiliate while there are seven dissenting members." The official minutes of the December 12, 1957, meeting of Local 183 of Fairbanks, Alaska, indicates that twelve members voted against the consolidation of Local 183 and Local 959. The Courts and the National Labor Relations Board have set forth certain conditions which must be fulfilled. The consolidated unions must be of comparable size and must have an equal voice in deliberations; there must be an approximate equal division of officers between the unions; and the consolidation must reflect a truly democratic expression of the views of the membership. The Courts are in agreement that a vote taken on such an important issue as dissolution or merger is void where the members have not been sufficiently apprized beforehand that anything so far outside the ordinary business of the union is to be presented at the meeting. This is particularly true where the meeting as in the present case on December 12, 1957, is a special and not a regular meeting. The notice given must be such that it can reasonably be concluded that in the ordinary course of events the membership generally if not entirely would have the opportunity of acquiring knowledge that the meeting was to be held and of the business to be transacted. The notice of the meeting must give its object and where the meeting is to deal with so important a matter as dissolution or merger, it is not sufficient to state that the meeting is very important. Notice must be timely as well as specific. The official minutes of the December 12, 1957 meeting of Local 183 of Fairbanks reflect that the question of merger was never presented as a single clear-cut is-

sue. The approval of the merger was treated as a part of or as a prerequisite to the request for the granting of autonomy and the two questions were presented for a single vote.

The record does not disclose that any sufficient and adequate notice had been given to the members that the question of merger would be considered and voted upon. The Court thinks that for this reason alone the merger so effected will be considered as void.

The Court is asked to consider and determine the applicability of Rule 23(c), Federal Rules of Civil Procedure, 28 U. S.C.A., to the facts of the case.

The Court is presently of the opinion that the Rule is not applicable for the reason that the consent order is not a final settlement of any essential issue. The controlling issue in the case arose from the request of the plaintiffs that the individual defendants herein should not be permitted to assume the duties of the offices to which they had been elected. Such issue has not been determined. By the consent order such officers so elected were permitted to proceed upon the duties of their offices provisionally. Such permission was temporary only and subject to revocation. The Court views the consent order as procedural and within the control of the Court.

There has been presented to the Court for decision the motion of the Teamsters to disqualify and remove Godfrey P. Schmidt as a Monitor. The motion rests primarily upon the allegation that while serving as a Monitor the said Schmidt has continued to represent employers in collective bargaining negotiations with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; that Schmidt's representation of such employers having contractual relation with the International Brotherhood presents such a direct and clear conflict of interest on his part as to disqualify him from further service as a Monitor pursuant to the Court order. The Court finds that the Teamsters have failed to exhibit such conflict of interest as alleged. Accordingly the motion seeking the removal of Schmidt as Monitor is denied.

The Court requests the Chairman of the Board of Monitors to present for the purposes of the Court findings of fact, conclusions of law and an order consistent with this Memorandum Opinion.