**Roger YOUNG, etc., et al., Plaintiffs,**

v.

**A. J. HAYES, etc., et al., Defendants.**

**Civ. A. No. 4176.**

United States District Court
District of Columbia.

July 10, 1961.

Howard P. Williams, Washington, D. C., and Herbert M. Ansell, Los Angeles, Cal., for plaintiffs.

Plato Papps, Edward J. Hickey, Jr., and Bernard Dunau, Washington, D. C., for defendants.

LEONARD P. WALSH, District Judge.

Plaintiffs are local lodges affiliated with, and individual members of the International Association of Machinists. (The Local Lodges are Nos. 1484, 1235, 2193, 2195, 2215, 1571, 311, 1186, 575, 1600, 1173, and 1414). Plaintiffs filed a complaint for injunctive relief against the defendant International Association of Machinists (hereinafter also referred to as the International Organization), and defendants Albert Hayes and Elmer Walker as Union officials. Plaintiffs' "Motion for Summary Judgment", and Defendants' "Motion to Dismiss, or, in the alternative for Summary Judgment" were argued and taken under advisement.

The International Organization held its quadrennial convention in St. Louis, Missouri, on September 6 to 15, 1960, pursuant to Article II, Sec. 1 of the Union constitution. At the convention the Execu-

tive Council submitted to the Committee on Law 106 proposed amendments to the constitution, and the Committee reported these amendments out to be voted upon by the convention.

The proposed amendments were accompanied by a circular and a statement of the defendant Hayes to the effect that the amendments were *necessary* under the Labor-Management Reporting and Disclosure Act (Landrum-Griffin Act), 29 U.S.C.A. § 401 et seq. A majority vote of the convention subsequently adopted the proposed amendments.

An official ballot on the amendments, as submitted to the convention, and dated September 30, 1960, was forwarded to all Local Lodges affiliated with the International Organization for vote by the membership. The ballot was divided into Part I, which contained 47 amendments all listed under Proposition 4, and Part II, which contained 59 amendments separately listed for voting.

As to Part I, Proposition 4, plaintiffs allege that the membership was not afforded opportunity to vote upon each of the 47 amendments separately as required by Article XXIII, Sec. 4, of the Constitution. Plaintiffs also allege that the delegates to the convention were totally unaware the 47 amendments would be submitted for voting purposes under the one proposition rather than individually, and claim they first became aware of this when the ballots were mailed to the Local Lodges. Defendants, of course, claim otherwise.

Each of the Local Lodges voted on the proposed amendments in November, 1960, in accordance with Article XXIII, Sec. 6, of the Constitution. The Report of the Committee on Law prefaced the body of the ballot and contained the rather confusing language to the effect that: "Several Propositions, which had not been acted upon by the Convention separately, have been grouped on this ballot as a single Proposition for the convenience of the membership in voting * * * ". There was also an indication, which the Court notes, as stated below, purporting to explain to the membership that Proposition 4 was acted upon by the Convention as a single proposition.

The heading of Proposition 4 reads as follows:

"These changes made mandatory through passage of the Landrum Griffin Act".

Also, statements introductory to Proposition 4 read in part:

"These amendments represent necessary changes in our Constitution so as to conform to the requirements of the Landrum-Griffin Act and in conformity with convention action shall be voted on as one proposition."

As provided by Article XXIII, Sec. 6, of the constitution, the ballots were returned to the General Secretary-Treasurer, and the December 15, 1960, issue of "The Machinist", the International Organization house organ, stated that Proposition 4 and the 47 amendments contained therein had been adopted by the membership on a vote of 48,292 to 10,783, and would take effect on January 1, 1961.

Certain of the plaintiffs requested the International Organization to delay putting into effect the amendments contained in Proposition 4 until an appeal could be made to the Grand Lodge Convention for a final ruling, but the defendant, Walker, informed plaintiff, Williams, that the matter was not one constituting a grievance and therefore it would not be submitted to the Grand Lodge Convention for a ruling. No action has been taken to put the amendments into effect pending this opinion.

Plaintiffs allege that the acts of the defendants insofar as they have deprived the membership of the right to vote upon all proposed constitutional amendments separately, i. e., the 47 amendments comprising Proposition 4 having been voted upon as unit, were in willful and deliberate violation of the contract between the defendant, International Organization, and plaintiffs, the Local Lodges, and other Lodges similarly situated, and plaintiff members, and other members.

Plaintiffs allege that the acts and conduct of the defendants, as set forth above, violate Title I, Sec. 101(a) (1) of the Landrum-Griffin Act.

Plaintiffs, Local Lodges, also allege that they, as well as the International Organization, constitute "Labor organizations" within the meaning of Section 3(i) of the Landrum-Griffin Act, 29 U.S. C.A. § 402(i), and section 2(5) of the Labor Management Relations Act, 29 U.S. C.A. § 152(5); and that the acts and conduct of the defendants constitute a violation of contract between labor organizations within the meaning of section 301 (a) of the Labor Management Relations Act.

Plaintiffs in their complaint cite six examples which they claim are amendments grouped within Proposition 4 and which do not in any way deal with changes made necessary by the Labor-Management Reporting and Disclosure Act of 1959, and which would restrict the powers of the Local Lodges and rank and file, and increase the powers of the International Organization:

"(1) Article I, Sec. 3, as amended, would give International President a veto over amendments enacted by a Local Lodge as to their By-Laws.

"(2) Article V, Sec. 3, would substantially broaden the powers of the defendant officials to invest funds belonging to the defendant International Organization.

"(3) Article VI, Sec. 5, expands the power of the International President to suspend persons within the Organization.

"(4) Article XXIV, sec. 4, would give to the Executive Council the power to change at will any provision of the Constitution whenever *it* believes such provisions are in conflict with applicable civil law. In this way the Executive Council could complete circumvent the procedure set forth in Article XXIII and Article XXIV, under which members are guaranteed the right to approve or disapprove of all proposed Constitutional amendments.

"(5) Article XI, Sec. 2, would limit the use to which money raised by Grand Lodge assessment could be used.

"(6) Article XVI, Sec. 7, would give to the International President the power to strike down requirements established by the District Lodges concerning the eligibility of candidates at the District Lodge level." [1]

Plaintiffs in their complaint, among other things, ask that the defendants, or their representatives, be enjoined and restrained from publicizing the results of the balloting on Proposition 4, and from putting into effect the amendments contained therein, and that the defendants be required to submit new ballots on the amendments contained in Proposition 4.

It is also alleged that after the delegates, by a majority vote, have approved the amendments, then the Committee on Law, pursuant to Article XXIV, section 3, must submit copies thereof to the General Secretary-Treasurer, who in turn pursuant to Article XXIII, section 4 is required to have said amendment printed

---

1. Defendants state that plaintiffs have raised a seventh example in that plaintiffs claim Article XI, sec. 2, of the Constitution of the International Association of Machinists, as amended by Proposition 4, now gives the Executive Council the power, not heretofore possessed by it, to recommend a special assessment which the membership in a referendum may then accept or reject.

Defendants quote Art. XI, Sec. 2, and claim that contrary to plaintiff's contention, the power of the Executive Council to initiate a vote by the membership to accept or reject an assessment was not originated by Proposition 4, but existed before then and state: "The effective change made by Proposition 4 was the deletion of the clause authorizing a departure from the purpose specified in the ballot if two-thirds of the membership voted for the assessment. As we have shown in our original Points and Authorities, pages 12–13, this deletion is responsive to the Landrum-Griffin Act."

in the form of a referendum ballot and "arranged in such a manner as shall allow each subject to be decided to be voted upon separately and forwarded to the respective" Local Lodges for a vote of acceptance or rejection on each amendment.

It is this latter matter that will first be considered by the Court.

Plaintiffs urge upon the Court that the combination of a great number of amendments in one Proposition is an abuse of discretion when submitted to the membership as it was in this case. After a review of the constitution and the facts in the case the Court finds itself in agreement with the plaintiffs on this point.

The Landrum-Griffin Act as printed in the United States Code is broken down into 7 sub-chapters dealing with diverse topics (or subjects less comprehensive in nature) coming within the broader general subject of the Act, the labor management reporting and disclosure procedures. Now, as noted above, the constitution provides that the membership is to be permitted to vote on each "subject" separately in a referendum ballot. Plaintiffs argue that Proposition 4 embracing as it does 47 amendments contains more than one subject within the Proposition, and although the 47 amendments may touch the broad general subject of the Landrum-Griffin Act, they are not "mandatory" in the sense that the Act requires them and as the ballot stated, nor are they "necessary" as the ballot stated except perhaps as that Act is interpreted by the Committee on Law.

Defendants meanwhile admit that while the changes contained in Proposition 4 may not all be mandatory in the sense that they are affirmatively required by the Act, they are mandatory in the sense their "inclusion is essential to minimize the risk of misunderstanding and friction in the exercise by members and subordinate units of rights conferred by the Landrum-Griffin Act," and/or they

are responsive to the Act. The Court agrees that they are in a sense responsive to the Act, but considers that many arbitrary provisions could be incorporated into authentic mandatory changes under the guise of being generally responsive.

Unfortunately many of the problems over which litigation arises flow from a confusion or a misunderstanding over the meaning or definition of a term as that term is used in the context in which it appears. A word may mean one thing to one person and another thing to another person. Persons may fail to distinguish between words like "price" and "value" and treat them as being completely synonymous, whereas, in fact, in most cases they are freely distinguishable. And so it is here, in the Court's opinion, with respect to the term "subject" as it appears in the Union's constitution. However, the Court in its objectivity considers that it can readily resolve the dispute over the meaning of the term here.

█ The Landrum-Griffin Act is a comprehensive item of legislation, and an attempt by the International Organization to submit to the membership a ballot wherein one proposition embracing, as it does, 47 amendments which the Court determines are in conformance with the Act rather than "mandatory" in the sense they are required by the Act, is an erroneous construction of an ambiguous provision of the Union's constitution, and as such an abuse of power conferred on the defendants, or as provided for amending procedures by the Constitution. Harris v. National Union of Marine Cooks and Stewards, 1950, 98 Cal.App.2d 733, 221 P.2d 136. See Articles V, Sec. 1 and 2, VI, Sec. 1, VII, Sec. 1, XXIII, XXIV, Sec. 3, and XXV, Sec. 1, of the constitution. The spirit, if not the exact wording of the Landrum-Griffin Act, contained in the so-called Bill of Rights of Members of Labor Organizations, section 101 (a) (1),[2] would seem to require the submission of the amendments believed to be needed in order for the Union to conform

---

2. Sec. 101(a) (1): "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections

or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meet-

to the provisions of the Act, on a separate amendment basis, or at least a submission of the proposed amendments on the basis of subchapter headings as they appear in the United States Code Annotated, 29. U.S.C.A. Ch. II, or some other grouping less comprehensive than trying to encompass the entire legislation in one Proposition.

█ In the Court's opinion, the use of the words "mandatory" and "necessary" in the ballot may very well have been confusing and misleading to the membership, and as such constituted an erroneous interpretation of the Landrum-Griffin Act and imparted to the membership via the ballot an almost "forced choice" method of voting. For that reason alone the Court considers the ballot was not in accordance with the constitution, Article XXIV, Section 3, "compiled in the form of a ballot suitable for submission to the membership through the referendum."

Where such confusing language is used, in addition to the grouping of such a large number of amendments and such diverse matters into one proposition for amendment, there is additional reason to hold the action of the International Organization and its officers as erroneous and arbitrary and as such illegal.

Plaintiffs have cited at least six instances wherein they claim more than one subject was submitted to the membership, and these cited examples are denied as being different subjects by the defendants; however, after examination of Proposition 4, the Court is satisfied that more than one subject as contemplated by the constitution is embraced therein.

█ The possibility or claim advanced that similar propositions had been submitted to the membership as was done here and that the procedure is a custom and practice does not, in the Court's opinion, make this action free from challenge by the plaintiffs, if, in fact, it is violative of the constitution. Cunningham v. English, D.C.1957, 175 F.Supp. 764.

Plaintiffs cite the legislative history of the Landrum-Griffin Act to the effect that it contains affirmative federal protection to union members in their right to vote as prescribed by their union constitution. H.Rep. No. 741, 86th Cong., 1st Sess. H.R. 8342. Defendants claim that while a provision was contained in H.R. 8342 to that effect, that the law as enacted omitted such a provision guaranteeing to union members "all the rights and privileges pertaining to membership under the constitution and bylaws of such labor organization." The defendants go on to claim that the enactment of section 101(a) (1) of the Landrum-Griffin Act has not put the courts into the business of enforcing rights granted by internal union law. However, it would appear to this Court that a plain reading of the Act in its Bill of Rights portion, as well as others, is a clear indication by Congress that the right to vote extended in the Act is not a mere naked right to cast a ballot. Rather, the general tenor of the Act would seem to indicate that those who make up the management of the union may not submit amendments for referendum to the membership in any form they wish. Permitting a union to submit propositions to its membership in any form they wish might very well open up the way of usurpation of power by union management, which the Court cannot believe was intended by the framers of the Landrum-Griffin Act. The Courts have said that by becoming a member of a union the worker, in effect, makes a contract to be governed by the constitution and by-laws and rules of the organization. Smith v. General Truck Drivers, etc., Union Local 467, D.C.S.D.Cal.1960, 181 F.Supp. 14.[3]

It would seem, therefore, that if the worker is to be held to what amounts to a contractual duty to adhere to the constitution, extreme care should be taken to make sure every procedural safeguard is provided him when amendments are proposed and submitted to the membership

ings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

3. The Court was interpreting section 101 (a) (1) of the Landrum-Griffin Act while making that finding.

for vote, and thus insure adherence to union constitutional amending procedures. The opinion of the court in the case of Hughes v. Local No. 11 of International Association of Bridge, Structural, and Ornamental Ironworkers, AFL-CIO, 3 Cir., 1960, 287 F.2d 810, 818, cited by the defendants, in no way alters this Court's opinion with respect to the safeguards that should be afforded the union members in amending the union constitution.[4]

■ This Court finds the right to "vote in * * * referendums * * * subject to reasonable rules and regulations in such organization's constitution and by-laws" is a right which is enforceable, in this case, by the membership against the defendants to insure that ballots for referendums are submitted in a suitable form.

To this Court, the words "subject to reasonable rules and regulations in such organization's constitution and bylaws" appearing at the end of section 101(a) (1) of the Act, may not, as the Third Circuit seems to say, "permit of a construction that would secure to members of labor organizations rights in addition to those specifically set forth", *but* that language is considered to permit of a construction that more clearly *defines*, as in this case, the right to vote as set forth in the union's constitution. The incorporation of a reference to the union's constitution and by-laws must surely have been intended as an aid in more clearly defining the organizational rights specifically set forth in section 101(a) (1) where they were consistent with the Bill of Rights section of the Act.

■ The Court will not take it upon itself to direct the International Organization to submit the amendments to the constitution in any specified way, other than to state that the amendments must be compiled in a ballot form suitable for submission to the membership through referendum consistent with this opinion. The submission of the 47 separate amendments to the membership would certainly be free from objection, but the defendants may submit them in another form which will comply with this opinion. If the latter option is exercised, the defendants may object that they are forced to speculate as to exactly what form the amendments might take, and this is true to an extent; and the Court considers it can only answer such objection at this point by stating that it is concerned that, consistent with the Landrum-Griffin Act, the membership should be fully informed as to amendments which are mandatory in the sense they are affirmatively required by the Act, etc., and that full disclosure be permitted in that the electorate be as fully informed and educated as is possible, and consistent with orderly procedures, as to the pros and cons of the subjects (in a more narrowly defined manner than was done here) submitted to them for vote. While it may be that this latter procedure may be more costly and more time consuming and laborious, it is considered to be in keeping with the

4. In that case, the Third Circuit ordered a remand where the appellant, Hughes, had sought to become a "member" of Local 11 in Mine Hill, New Jersey, having been a member in good standing of Local 489 in Scranton, Pennsylvania, an affiliate of the same international union. The Court found him to be a member within section (3) (*o*), subchapter II, of the Landrum-Griffin Act. As to the defendant Local 11's argument that though Hughes might be a "member" under one portion of the Act, the right to transfer is not specifically enumerated in Sec. 101(a) (1) of the Act, the Court had the following to say:

"Since Hughes is a 'member' of Local 11 within the meaning of the Act, he is entitled to the rights specified. He is also entitled to all other rights accorded to a union member under the Act. But there is no warrant in the statute for granting a member of a labor organization any other membership rights secured to him by the union's constitution and by-laws which are enforceable only under the state law in a suit such as that at bar. If, therefore, it is determined on remand that Hughes is entitled to relief, insofar as it is predicated on the Act, such relief must be limited to that appropriate to secure to Hughes the equal rights and privileges guaranteed by Section 101(a) (1) and other provisions of the Act."

general intent of the Landrum-Griffin Act. In time, submission of further cases involving voting procedures may permit the courts to set down more clearly defined standards, but this Court does not consider that this can be done at this time.

Defendants claim the Court should not enter into quarrels between union members and their unions, and the Court should place great weight on the interpretation given the constitution by the officers of the International Organization. However, there arise occasions for non-adherence to the foregoing alleged general rules, and the Court is confident the instant case is an instance where it should not adhere to such alleged general rules.

The Court finds there are no issues of material fact existing in this case, and that plaintiffs are entitled to judgment as a matter of law. The Court will, therefore, grant the motion of the plaintiffs for summary judgment, and counsel for plaintiffs will submit an appropriate order consistent with this opinion.