Steve G. TISZA, et al., Plaintiffs–Appellants,

v.

**COMMUNICATIONS WORKERS OF AMERICA, et al., Defendants–Appellees.**

No. 91–2442.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1991.

Decided Jan. 8, 1992.

Roger N. Gold, argued, Gold & Polansky, Chicago, Ill., for plaintiffs-appellants.

Irving M. Friedman, Michael B. Erp, Denise S. Poloyac, Katz, Friedman, Schur & Eagle, Chicago, Ill., James B. Coppess, argued, Washington, D.C., for defendants-appellees.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Imagine a city with two voting precincts. After an election the city announces that in the First Precinct the vote was Perkins ten, Jones eight; that no votes were received from the Second Precinct; and that Perkins therefore won. Suspicious, certainly. But if no resident of the Second Precinct appears to announce "I voted, and my vote was not counted" or "I wanted to vote but was prevented" or "No one told me about the election", may a resident of the First Precinct take up cudgels? A person whose vote was counted exercised excessive influence and suffered no injury. It would be like a suit by a resident of a rotten borough complaining about malapportionment.

This is such a suit, by residents of the First Precinct—rather, by members of Local 4250 of the Communications Workers of America. In April 1990 the union and American Telephone & Telegraph Co. reached agreement on an early-retirement amendment to their pension plan. The union conducted a referendum on the changes. Of the 425 local unions that included members employed by AT & T, 287 reported votes. The count was 16,184 in favor of the changes and 13,382 against. Votes from some 35% of the eligible members were received, a rate of participation the union thought acceptable in view of the small proportion of workers potentially affected by the changes. (Approximately 44% of the members had cast ballots concerning the general collective bargaining agreement then in force.)

Members of Local 4250 who voted against the proposal filed this suit, contending that the election had not complied with § 101(a)(1) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1), which provides that members of unions "shall have equal rights and privileges within such organization to ... vote in elections or referendums of the labor organization, ... subject to reasonable rules and regulations in such organization's constitution and bylaws." Is it not obvious, plaintiffs inquired, that the members of the 138 locals that did not report votes did not enjoy "equal rights and privileges" in the referendum? Surely the union either failed to notify these locals and their members properly or neglected to count the votes they returned. The district court granted summary judgment to the defendants, 774 F.Supp. 1084 (N.D.Ill.1991), observing that for all the record shows the 138 locals had no members interested in the

outcome of the referendum. Some locals have few persons employed by AT & T, and the reporting rate is never 100%; when the referendum concerns a subject interesting to a subset of workers, the court reasoned, a low reporting rate does not imply a problem under § 101(a)(1).

■ The district court did not mention the union's threshold objection: that the plaintiffs lack standing. All of the plaintiffs' votes were counted; no member of the 138 non-reporting locals has intervened. Footnote 1 of the district court's opinion reads: "The Union has also moved for various Rule 12(b) dismissals, which we need not address." If by this the judge meant that a court may disregard the absence of jurisdiction so long as it decides in the defendants' favor, he was mistaken. *Metropolitan Life Insurance Co. v. Cammon*, 929 F.2d 1220, 1222–23 (7th Cir.1991). Jurisdiction is the first question in every case. Plaintiffs who do not suffer injury lack standing, and there is no "case or controversy" within the meaning of Article III. The court's power to enter a judgment of any kind, in favor of either side, depends on the existence of a justiciable dispute.

On a handful of occasions the Supreme Court has assumed the existence of jurisdiction in order to bring an end to a case whose outcome was foredoomed by a recent decision. In each the Court stressed that the jurisdictional problem was both significant and difficult. E.g., *Norton v. Mathews*, 427 U.S. 524, 530–33, 96 S.Ct. 2771, 2774–76, 49 L.Ed.2d 672 (1976). Compare *Cross–Sound Ferry Services, Inc. v. ICC*, 934 F.2d 327, 333–34 (D.C.Cir.1991), with *id.* at 342–46 (Thomas, J., concurring); see also *Browning–Ferris Industries of South Jersey, Inc. v. Muszynski*, 899 F.2d 151, 154–60 (2d Cir.1990). Given the strength of the rule against advisory opinions—equally implicated whether the defendant or the plaintiff is declared the winner of a non-controversy—we do not understand these cases to establish a principle that courts generally may disregard the absence of jurisdiction. The district judge did not suggest that the jurisdictional problem is difficult or that there are strong reasons to avoid decision on it. Accordingly, jurisdiction is the first (and last) question we tackle.

■ Members of the 138 non-reporting locals can protect their own interests. Workers elsewhere do not need members of Local 4250 as their champions. There is no foundation for third-party standing. *Whitmore v. Arkansas*, 495 U.S. 149, 154–56, 110 S.Ct. 1717, 1722–23, 109 L.Ed.2d 135 (1990). The plaintiffs must identify harm personal to themselves. *Wooddell v. Electrical Workers*, — U.S. —, 112 S.Ct. 494, 498–99 n. 4, 116 L.Ed.2d 419 (1991). That is hard to do, for their votes were over-weighted if, as they say, other members were cut out of the election. Excessive voting power is a boon, not a burden. See *Skolnick v. Board of Commissioners*, 435 F.2d 361 (7th Cir.1970) (residents of over-represented jurisdiction lack standing). Accord, *League of Women Voters v. Nassau County Board of Supervisors*, 737 F.2d 155, 161–62 (2d Cir.1984); *Fairley v. Patterson*, 493 F.2d 598, 603–04 (5th Cir.1974). Plaintiffs say that the statute gives them a right to take part in fair elections, which the union's procedures denied them. This confuses the right with injury from its negation. It is not enough to point to a substantive rule; the plaintiff must identify a personal loss traceable to a violation of the rule. *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Plaintiffs in *McGinnis v. Teamsters Local 710*, 774 F.2d 196 (7th Cir.1985), and *Bunz v. Moving Picture Machine Operators*, 567 F.2d 1117 (D.C.Cir.1977), suffered such losses. In *Bunz* the opponents of a proposal had the votes to defeat it, yet after issuing a "patently frivolous" interpretation of the voting rules the union put the defeated proposal into force. 567 F.2d at 1122. In *McGinnis* the plaintiffs were adversely affected by the voting rule, the equivalent of being a member of one of the 138 non-reporting locals.

We can imagine only one avenue open to persons whose votes were over-weighted. If the procedure was biased—that is, if the non-reporting locals were more likely to vote against the proposal than were the reporting locals—and if the plaintiffs were injured by the changes approved in the referendum, then they could identify personal loss. Imagination does not assist these plaintiffs, however, for their lawyer conceded at oral argument that they have no reason to believe that members of the non-reporting locals were less favorably disposed toward the proposal than were members of the 287 reporting locals. What is more, none of the plaintiffs contends that he lost any advantage available under the pension plan as it stood before its amendment. When problems in voting do not affect the outcome of the election, and the outcome of the election does not affect the welfare of the voters, there is no case or controversy. Plaintiffs sought an advisory opinion, and the district judge should not have awarded that dubious prize to the defendants.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss the complaint for want of jurisdiction.