647 F.Supp. 723 (1986)
David William LIVINGSTON, Jr.; Israel Eugene Price; and Gerald Watson Gibbs, Plaintiffs,
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL-CIO; Shopmen's Local # 812, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO; and Pullman Standard Manufacturing, a division of Trinity Industries, Incorporated, Defendants.
Civ. No. A-C-86-264.
United States District Court, W.D. North Carolina, Asheville Division.
October 31, 1986.
*724 Mullins & Van Hoy by Philip M. Van Hoy, Charlotte, N.C., for plaintiffs.
Elmore & Powell, P.A. by Bruce A. Elmore, Jr., Asheville, N.C., for Unions.
Paul B. Taylor, Charlotte, N.C., for Pullman-Standard.

MEMORANDUM OF DECISION
SENTELLE, District Judge.
THIS MATTER comes before the court upon plaintiffs' prayer for preliminary injunctive relief against defendants' entering into a collective bargaining agreement. By way of factual background, on October 31, 1985, a bargaining unit of employees of Defendant Pullman Standard (Pullman) voted in a certification election to name the international and local unions who are defendants in this action (hereinafter, collectively, "Union") as the exclusive bargaining representative of the unit members. The National Labor Relations Board certified the Union as exclusive bargaining representative on November 8, 1985. A Union representative and a bargaining committee selected by the unit employees entered into negotiations with Pullman with the intent of reaching a collective bargaining agreement. After extensive negotiation, these unit representatives and Pullman reached a tentative agreement September 30, 1986, which was submitted for a ratification vote at a meeting held at 3:30 that afternoon at an Asheville restaurant. In a vote by show of hands, a majority of those present voted to ratify the agreement; a minority (approximately eight, including the plaintiffs in this action) abstained from the vote. Plaintiffs attack the procedures under which that ratification vote was conducted as being violative of the Union's duty of fair representation and seek to invalidate that ratification vote and enjoin the entry of any contract based thereon.
On October 22, this court heard plaintiffs' prayer for temporary restraining order, took evidence, and granted the relief in an Order effective until further hearing, which was held October 29. At that hearing, the court took further evidence and extended the Order for a period of ten days, or until the entry of further order. By further order, granted contemporaneously herewith, this court will grant preliminary *725 injunction restraining the defendants from entering any agreement based on that ratification vote until trial on the merits of this cause or the Union's compliance with certain alternatives set out in the Order. Other facts necessary to the entry of this decision are set out in the body of this memorandum.

I.
Before reaching the merits of the prayer for preliminary injunction, the court must first address a jurisdictional question. The Union raises in its answer, by motion under Fed.R.Civ.P. 12(b), an attack on the subject matter jurisdiction of this court.[1] The Union's argument is based on the view that the National Labor Relations Act specifically vests jurisdiction in the National Labor Relations Board of labor disputes involving no breach of contract under 29 U.S.C. § 185(a). While this is generally true, it is also true that "[F]ederal courts may acquire jurisdiction over actions for breach of the duty of fair representation against a union under 28 U.S.C. § 1337...." Anderson v. United Paperworkers, 641 F.2d 574, 576 (8th Cir.1981). The cited statute provides, in pertinent part: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." It is widely recognized that this statute includes the National Labor Relations Act and vests the district courts of the United States with jurisdiction over claims of breached duties of fair representation by unions.[2] Since this matter involves allegations of such a breached duty, this court concludes that it has jurisdiction over the subject matter.

II.
Union contends that the court, nonetheless, lacks jurisdiction on the two-pronged argument that (a) a ratification vote is an internal union affair over which the court should not be exercising jurisdiction; and (b) the plaintiffs, while members of the bargaining unit, are not members of the Union and, therefore, according to Union's counsel in oral argument, "have no rights at all." These arguments by the Union ignore certain salient factors, both of law and fact.
While it is true that the jurisdiction of the court in fair representation matters is not calculated to extend to purely internal union affairs, "the duty of fair representation `arises out of the union-employee relationship and pervades it.'" Retana v. Apartment, Motel, Hotel and Elevator Operators Union, 453 F.2d 1018 (9th Cir. 1972). As Judge Ritchie pointed out in Local 2885 v. Postal Workers, 113 L.R. R.M. 2433 (D.D.C.1982) [Available on WESTLAW, DCTU database], in a case involving the ratification of a collective bargaining agreement, "the ratification process ... had important external ramifications. Indeed, ... it had profound impact on perhaps the most important topic in any bargaining sessionwages (merit pay increases and save grade provisions)." (Emphasis in the original.) Id. The same applies here.
Factually, the Union is correct that the plaintiffs are not Union members. However, they are bargaining unit members. The Union is the exclusive representative, not of the Union members alone, but of the bargaining unit members. 29 U.S.C. § 159. Given this exclusivity of representation, it appears elemental that the duty of fair representation runs not to union members alone but to all members of the bargaining unit. See, e.g., Freeman v. Local *726 Union # 135, 746 F.2d 1316 (7th Cir.1984); Local 2885 v. Postal Workers, supra; and Branch 6000 Mat Ass'n of Letter Carriers v. NLRB, 595 F.2d 808 (D.C.Cir.1979).
The reasons for extending this duty are particularly compelling on the facts of the instant case. According to the evidence before this court, no member of the bargaining unit is a member of the Union. A union organizer, testifying at the preliminary injunction hearing, candidly admitted that the Union did not encourage memberships in the Union by bargaining unit members until after a contract was in place, in order to avoid just such a situation as that in which the Union now found itself. Presumably he means to avoid this sort of litigation. The court will not permit that strategic decision by the Union to time its membership drive after the completion of a contract negotiation to deprive this court of jurisdiction over questions regarding its fair representation of the bargaining unit members. In short, the nonunion status of the plaintiffs (and all other bargaining unit members) does not divest this court of the jurisdiction noted in Section I of this opinion.

III.
Obviously, the conclusion that plaintiffs are entitled to be heard by the court on their prayer for injunctive relief is not tantamount to a conclusion that they are entitled to the relief. The Union argues, quite accurately, that no provision of Title 29 or any other federal law entitles bargaining unit members to a ratification vote. While plaintiffs may be heard to argue that general principles of equity and public policy should entitle union members to such a vote, these considerations do not enable the court to rewrite Acts of Congress, and this court will not undertake to do so. There is no such general right. However, a right to a ratification vote may exist on certain facts. Most commonly, the workers' right to vote in union referenda is drawn from the BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS, 29 U.S.C. ch. 11, subch. II, §§ 411-15. E.g., Bauman v. Presser, 117 L.R.R.M. 2393 (D.D.C.1984) [Available on WESTLAW, DCTU database]. That section of the Code guarantees all members of a labor organization equal rights, inter alia, "to vote in elections or referendums of the labor organization." Therefore, where a right to vote exists under the constitution or bylaws of the labor organization, its members have the right to enforce that provision of the union's constitution or bylaws through Section 411. Bauman v. Presser supra. However, this does not conclude the inquiry in the instant case, since the Union quite correctly points out that the constitution and bylaws of the Union which were introduced into evidence do not contain any such ratification procedure.
However, examination of the Union's constitution and bylaws does not end the inquiry either. Plaintiffs argue for a right to a fair referendum in the instant case on two additional bases. First, plaintiffs argue that they are entitled to a ratification vote on the equitable theory of promissory estoppel. Factually, plaintiffs rely on the evidence of Plaintiff Israel Price, corroborated by the testimony of another plaintiff, that during the certification campaign, Union Representative Tony Walencik promised: "That on the first contract that our workers negotiates or any bargaining unit is any and all persons in the unit are eligible to vote to ratify or turn down a contract." At the preliminary injunction hearing, Mr. Walencik testified that he made no such promise, but only represented to Price and a few other workers that such a procedure was generally followed.
The Union argues, persuasively, that promissory estoppel cannot apply on this evidence. While promissory estoppel has been applied in the context of determining fair representation claims, it applies with the following requisite elements:
... Plaintiffs must establish that: (1) the union was aware of the true facts; (2) the union intended its representation to be acted on or acted such that the plaintiffs had the right to believe it so intended; (3) the plaintiffs were ignorant of the *727 true facts; and (4) the plaintiffs relied on the union's representations to their detriment. [Citations omitted.]
Acri v. International Ass'n of Machinists, 781 F.2d 1393, 1398 (9th Cir.1986). This court agrees with the Union that plaintiffs' evidence in the instant case is not so clear, cogent, and convincing as to warrant the application of the doctrine of promissory estoppel.
Nonetheless, the evidence tendered on the theory of promissory estoppel goes to plaintiffs' second foundation argument for a right to a fair ratification referendum. Their argument contends that once a union has undertaken to act in representation of the bargaining unit members, even in a matter where it previously had no duty, it then has the duty to conduct that undertaking fairly and consistently with the duties of a union bound by the fair representation strictures of Title 29, United States Code, and the case law cited above. This court now holds plaintiffs' second argument to be a correct statement of the law. Kesner v. NLRB, 532 F.2d 1169 (7th Cir.1976), so holds, and this court believes correctly. As the Seventh Circuit pointed out, "It is venerable tort law that purporting to take action where duty is nonexistent creates in itself certain duties, or as the Board puts the matter, `it is a commonplace of our jurisprudence that those who act where they are not obliged to are nevertheless liable for misfeasance (sic) in the course of their undertaking.'" Id., at 1175. The argument thus runs that on the facts of the instant case, the Union having made representations to members of the bargaining unit in the certification process that the referendum would be held, and having in fact undertaken such a referendum, cannot be heard to say that the referendum, not being a required one, need not be a fair one.
The Union argues that the right of fair representation and the application of doctrines of equitable estoppel and "assumed duties" to the right of fair representation applies to grievance procedures and not to union referenda. However, this court agrees with Judge Ritchie of the United States District Court for the District of Columbia that:
[T]he duty of fair representation that is acknowledged with respect of the bargaining phase would also extend, in this instance, to the ratification phase. If the court were to rule otherwise, the duty of fair representation owed to the [non-union member bargaining unit members] in the bargaining phase would be seriously diluted, in the same way that the force of 29 U.S.C. § 411(a)(1) would be "substantially eviscerate[d]" if the plaintiff local were not guaranteed the right of ratification that other locals were.
Local 2885 v. Postal Workers, supra, at 2433-34, citing American Postal Workers Union Local 6885 v. American Postal Workers Union, AFL-CIO, 665 F.2d 1096, 1102 (D.C.Cir.1981). In this case, as in the matter before Judge Ritchie, if the duty of fair representation involved in the holding of the ratification election has been breached, then the plaintiffs are entitled to have the court exercise its jurisdiction to correct that breach.

IV.
Nonetheless, the inquiry has not yet been exhausted. Though this court holds that it has jurisdiction of this controversy, and further holds that the duty of fair representation extends to the conduct of the ratification referendum in this case by reason of equitable estoppel and the duty imposed by voluntary undertaking, the question, nevertheless, remains: have the plaintiffs presented sufficient evidence of a breach of that duty to entitle them to the preliminary injunction sought? It is the opinion of this court that they have. While the Union may well argue that if a right to a ratification vote exists, it was here afforded, the evidence before the court presents a scenario in which that right was not genuinely presented. As the D.C. Circuit held in Bunz v. Motion Picture Operators Union, 567 F.2d 1117 (1977), "[A] union cannot immunize itself against charges of discrimination simply by affording *728 each member the `mere naked right to cast a ballot' [footnote citations omitted] the right each member has to vote must be `meaningful.'" Id., at 1121. In the instant case, it was not. Courts have found the "equal right to vote"[3] to be denied where union officials required a standing vote rather than a secret ballot;[4] where the union conducted "an unusually aggressive attempt to persuade approval" coupled with other irregularities;[5] where union officials hindered access of opponents to the subject of the referendum;[6] and most especially where union officials circulated inadequate or misleading information about the matters to be voted upon. In this last circumstance, in Bauman v. Presser, supra, the court found that overly aggressive advocacy of the contract ratification, coupled with a lack of adequate notice and opportunity for the opponents of the ratification, and especially the element of surprising the opponents of the referendum, constituted a sufficient basis for voiding the election. Many, if not all, of the above defects are present here. The ratification vote meeting was held on September 30, 1986, the same day it was announced, and commenced at the precise moment of the shift end of the large majority of members of the bargaining unit at a location some ten minutes from the place of employment.[7] The only notice of the ratification meeting was given orally during a break less than an hour and a half before the commencement of the meeting. While the court recognizes that adequacy of notice must be judged in light of all the surrounding circumstances, J. Ray McDermott & Co., Inc. v. NLRB, 571 F.2d 850 (5th Cir. 1978), and further recognizes that the Union in the case at bar did not have access to company bulletin boards, and further that ratification votes are often held on rather short notice once an agreement is reached, so that oral notice at break may have been the best feasible alternative; nonetheless, when all the circumstances are viewed, this notice does not appear to be an adequate one to opponents. The notice appears especially inadequate since the evidence is that all but one of the plaintiffs and other opponents of the ratification who testified at hearing did not receive the notice and learned of the meeting only "through the grapevine." Further, even given the fact that oral notice was probably the best feasible, under the circumstances, there is no reason made apparent why the ratification vote needed to occur the same day as the only notice or why the oral notice could not have been repeated on subsequent days with a somewhat later meeting.
The Union's counter argument to plaintiffs' contention that the quick vote was uncalled for is to contend that it was necessary since the 12 months' period following the certification election was about to expire and since "the Company" could petition for decertification if this were permitted to happen. The ratification of the contract, then, before the expiration of the 12-month period would lock the union bargaining unit and the Company into an exclusive representation period for the term of the collective bargaining agreement. 29 U.S.C. § 159. Among the flaws in the Union's argument is the obvious fact that "the Company" can never petition for decertification, but only the employees. 29 U.S.C. § 159(c)(1)(A). This contention by the Union, then, enhances rather than weakens plaintiffs' argument that the Union has treated them unfairly. The Union seems to be saying that it was justified in rushing the bargaining unit members into an election to extend their exclusivity of bargaining agency since, if they didn't rush them *729 into it, they might have time enough to decide to escape from that relationship. This is hardly a valid justification for the Union's tactic.[8]
At the meeting, the Union's representative told the workers that their only options were to vote to ratify the agreement presented by the Union and the bargaining committee or strike. Since the unit retained the option of continuing to work without a contract, with or without the pursuit of further negotiations, this was obviously the very sort of misrepresentation contemplated by the cases cited above. Again, the Union attempts to justify its stance by saying these were the only options since the 12-month period following certification was about to expire. Rather than rehash the discussion of this logic set forth above, the court will simply note that this is no excuse for the Union's misrepresentation of facts to its bargaining unit members or to its "unusually aggressive attempt to persuade approval."[9]
Added to the Union representative's misstatement was his further statement directed toward the plaintiffs and other opponents of ratification to the effect that, "We have some new faces. I hope the enemy didn't send them. The Company is our enemy and don't ever forget it." Two members of the bargaining committee then addressed the group, one stating that anybody that didn't support the bargaining committee could "kiss his ass and do it right now;" and the other, that he had no "goddamn use" for those who didn't support the committee. Following these statements from the officials conducting the meeting, a standing vote was taken. While the result was that approximately 28 voted in favor of the proposed ratification and eight abstained, under all the circumstances existing, this can hardly be found to be a reliable result.
The court will, therefore, make the following findings of fact and enter conclusions of law thereon.
1. Defendants, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO; and Shopmen's Local # 812, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO, are labor organizations which were certified November 8, 1985, as exclusive bargaining representative of a bargaining unit of employees of Defendant Pullman Standard.
2. That plaintiffs are members of that bargaining unit.
3. That a bargaining committee composed of a union representative and four members of the bargaining unit have been engaged in negotiations for a collective bargaining agreement with Defendant Pullman.
4. That on September 30, 1986, the bargaining committee and Pullman reached a tentative agreement.
5. A ratification vote was held at a meeting of bargaining unit members at 3:30 that afternoon.
6. That the only notice of this meeting was an oral one given that same day and not given to plaintiffs and others known to be opposed to the Union.
7. That the Union's constitution had no provision requiring a ratification vote.
8. That during the certification campaign, a representative of the Union had made representations to the plaintiffs and others in the bargaining unit that ratification votes would be held on the first collective bargaining agreement.
9. That the ratification meeting began at the moment of the end of the shift of the majority of the members of the bargaining unit.
10. That many of the members of the bargaining unit were still on the clock at work at the time of the meeting.
*730 11. That the vote at the ratification meeting was by show of hands.
12. That prior to the vote, the Union representative and two members of the bargaining committee made intimidating statements directed toward those who opposed ratification.
13. That the Union representation at the ratification meeting falsely represented to those present that their only choice was between ratifying that contract and going on strike.
14. That no attempt was made by the Union or anyone representing the Union or the bargaining committee to provide an opportunity for members of the bargaining unit to inform themselves on the contents of the contract prior to the meeting.
15. That no member of the bargaining unit is a member of the Union.
16. That only at the meeting were terms of the contract ever made known to the plaintiffs and other members of the bargaining unit, and then only in synopsis form.
17. That the defendants proposed to enter into the collective bargaining agreement without further ratification unless restrained.
18. That the only notice that many members of the bargaining unit had of the meeting came by accident or through hearsay.
19. That the beginning time of the meeting was at the end of the work shift, and the place of the meeting was five to ten minutes from the place of employment of the members of the bargaining unit.
20. That the entry of the collective bargaining agreement on these facts would not constitute fair representation of the members of the bargaining unit.
21. That the failure to comply with the standard of fair representation would constitute an unlawful act.
22. That that unlawful act would be committed unless restrained.
23. That the plaintiffs have no remedy at law.
Whereupon the court reaches the following conclusions of law:
1. That the court has jurisdiction of the subject matter and all parties hereto.
2. That this controversy involves questions under Title 29, United States Code, constituting federal questions justiciable by this court.
3. That there is a sufficient factual basis that the court may conclude that the Union has failed in its duty of fair representation.
4. The plaintiffs will be irreparably harmed if the entry of the collective bargaining agreement reached as a result of the breach of duty of fair representation is permitted to come into fruition.
In light of the foregoing discussion, it is clear that the plaintiffs have met the familiar standards for temporary relief set out in Jobbers Ass'n v. FPC, 259 F.2d 921 (D.C.Cir.1958), and numerous other cases. There is a clear likelihood that plaintiffs will prevail on the merits. If relief is not granted, plaintiffs will be irreparably damaged in that they will be bound to a contract on which they were not permitted to cast a meaningful vote and which will have the effect of extending the period of time during which they cannot attack the exclusive bargaining agency of the defendant for their bargaining unit. The issuance of the preliminary injunction will not harm the defendants since they can dissolve the same by simply holding a ratification vote that comports with procedural requirements. In short, the balance tips strongly in favor of the plaintiffs. The court will issue, and by Order filed contemporaneously with this memorandum has issued, the preliminary relief prayed by the plaintiffs.

ORDER
THIS MATTER coming on to be heard, and being heard, before the undersigned on plaintiffs' prayer for preliminary injunctive relief; and
*731 IT APPEARING to the court, for reasons more fully set forth in the Memorandum of Decision filed contemporaneously herewith, that the relief ought to be granted;
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:
That the defendants, their agents, attorneys, successors in interest, and those acting in concert with them are hereby enjoined and restrained from entering into any collective bargaining agreement until further order of this court; or, alternatively, until the defendants, International Association of Bridge, Structural and Ornamental Iron Workers, AFLCIO; and Shopmen's Local # 812, International Association of Bridge, Structural and Ornamental Iron Workers, AFLCIO, conduct for the bargaining unit, consisting of plaintiffs and other employees of Defendant Pullman Standard Manufacturing, a ratification vote meeting the following standards:
(1) At least three (3) business days' notice to all members of the bargaining unit. This requirement may be complied with by oral announcements at break on each shift for three (3) consecutive work days next preceding the date of the holding of such meeting, together with written notice to counsel for plaintiffs.
(2) Adequate circulation of the contents of the contract. The court deems this requirement already to have been complied with, the contents of the contract having heretofore been delivered to counsel for plaintiffs and circulated in some fashion among the members of the bargaining unit.
(3) A vote conducted by secret ballot, with ballot security agreeable either to plaintiffs through counsel or approved by this court. Plaintiffs are expressly ordered not to withhold approval of ballot security measures arbitrarily or capriciously.
All prior orders as to bond herein shall remain in effect.
NOTES
[1] Defendant Company has filed no answer and, while appearing at both hearings through counsel, has mounted no affirmative defense to the action. The Company apparently is assuming the role of bystander in this dispute between bargaining unit members and their representative, and the court will not interfere with Pullman's view of its own role.
[2] Cases recognizing the courts' jurisdiction and exercising such jurisdiction in fair representation controversies include Vaca v. Snipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); and Griffin v. International Union, 469 F.2d 181 (4th Cir.1972).
[3] Bunz v. Moving Picture Machine Operators, supra, at 1121.
[4] Bunz v. Moving Picture Machine Operators, supra.
[5] Bauman v. Presser, 117 N.L.L.M. 2393 (D.D.C. 1984).
[6] Sheldon v. O'Callaghan, 497 F.2d 1276 (2d Cir.), cert. denied, 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974).
[7] Unrefuted evidence offered at the preliminary injunction hearing establishes that some of the members of the bargaining unit were still on duty at the time of the meeting.
[8] The court will grant that the Union's fears may have been well founded since plaintiffs introduced into evidence a petition signed by a majority of the members of the bargaining unit to set aside the ratification vote and take a new one by secret ballot.
[9] Cf. Bauman v. Presser, supra.